Good morning, Your Honors. You're Mr. Lucero? Yes, Your Honor. Where'd you go to high school? Irvine High School, Your Honor. Where? Irvine High School. Never heard of it. It's in Norris County. It's not too far from here. Oh, I know where it is. They didn't have it when we were growing up. No, Irvine didn't exist. Yeah. Well, I know where it is. Good morning, Your Honors. May it please the Court, Richard Lucero appearing on behalf of the petitioner, Ms. Yanxia Yin. Your Honors, the petitioner filed an affirmative asylum application. She's claiming that she was persecuted in China. She stated that the government officials evicted her and her husband forcefully from their compensation. As a result of these actions by the Chinese government, the petitioner, along with 80 other people, went to protest at the government demolition office. As a result of this protest, the petitioner was arrested, she was interrogated, and she was severely beaten. The issue in this case, Your Honor, as I see it, is the adverse credibility finding made by the immigration judge. I think, jumping right to that, since you don't have a lot of time, the BIA appears to have found that there were a number of inconsistencies in Ms. Yin's presentation, and it's a real ID case, and so that all of them together formed the basis for that. Why should we not defer to the BIA's determination on that? Your Honor, the issue I see with the adverse credibility finding is the fact that the immigration judge and the board who affirmed the immigration judge's decision found the adverse credibility finding because the petitioner failed to corroborate her explanations for the inconsistency with her home. However, the immigration judge never put the petitioner on notice that she needed to provide corroboration to... Well, it doesn't have to give that notice in all instances, does it, I.J.? If the immigration judge determines in this particular case that corroboration is required, according to Wren, she must inform the petitioner that she needs to corroborate her claim. But isn't that, well, my point is, isn't that only if the petitioner's testimony is otherwise credible, and he found that it was not? Well, she found that it was not because she didn't agree with her reasoning for the inconsistencies. No, no, no, but my point is, under the law, that notice is required only if the testimony is otherwise credible, right? That's correct. And he found that it wasn't, so why should he give notice? Because her main reason for finding the adverse credibility finding was for lack of corroboration. However, she never gave her the opportunity to corroborate the finding. Well, there was also concern over, you know, what was her occupation, and that, you know, a statistician and a nurse, and, you know, where she was exactly working, and then that the housing place, she was registered at another location, and just, there were just a lot of things that it would just seem that, you know, if I said, I was, if someone said, what's your occupation, I would say a judge. I wouldn't say that I was a daycare worker, but I worked in a daycare center while I was going through school. Yeah, sure. And so some of those things just are, you know, concerning. And I would be the first to admit that that was an inconsistency. A couple things on that point. The petitioner did submit proof that she graduated from a nursing school because in her testimony she claimed she was a nurse. Secondly, this court held that in Wren that, or a discrepancy cannot be viewed as an attempt to enhance claims of persecution under the totality of the circumstances and militates against finding the applicant incredible. Here, the issue with respect to her employment had absolutely nothing to do whatsoever with her claim of asylum. Yeah, but it doesn't need to under Real ID. That's true, too, but we do need to view it in light of the totality of the circumstances. And in light of the totality of the circumstances, I would argue that this, her employment occupation had absolutely nothing to do with her immigration claim. There is no reason or no motivation for her to lie whatsoever regarding her employment. It doesn't enhance her claim in any way, shape, or form. Was this ever referred to mediation? It was not, Your Honor. Was there a reason? Did you ever ask to have it mediated? I did not, Your Honor. Well, the proceedings were in English, right? Yes. You had an interpreter there. Yes, Judge. And was there any problem with transitional errors? Did you check into that? That was not an issue in this case at all, Judge. No translation issues, that was not an issue. So your argument is that as far as, she did work as a nurse in China, and she was also a statistician. Yes, Judge. She did work as a nurse, and she worked as a statistician before she became a nurse. And again, I think it's crucial to note that she did submit proof that she graduated from nursing school. And she was working as a nurse here. She was working towards that, but she was not working as a nurse here. Working towards that, in a doctor's office. Correct, Judge. What does the record show as to when Ms. Yin became a nurse and where she worked between 1983 and 2007? In her testimony, she stated that she was a nurse, I believe if I have it correct, Judge, starting in the late 1980s in China. And the reason that she gave her the discrepancy in her household registration, because her household registration stated she was a statistician at a rubber factory. She stated that at the time that that household registration was issued, Chinese government didn't use computers, so it was just written in by hand. And for whatever reason, when she went to renew her household registration in 2001, her employment information just didn't carry over for whatever reason. And in the decision, the immigration judge stated that the petitioner did not submit any corroborating evidence to show that household registrations are generally inaccurate. But again, she never gave the petitioner an opportunity to obtain that corroboration. Well now, if she really didn't live in the, I'm not sure exactly how you say it, the... Humau Building. The Humau Building, that would be relevant to whether she would have participated in protest about being evicted there, right? I agree, Your Honor, but on that point, she did submit a document, a title document, showing that she in fact was an owner of that property. And the authenticity of that document never came into question, so I would assume that that document is valid, it was never an issue. Do you want to save any time for rebuttal? Yes, Your Honor, a couple minutes if I may. You're at two minutes. I guess I'll save the time for rebuttal. It's all right, I'm still presiding, so I'll give you two minutes. I'll give you, you've got two minutes and one second. Okay. I'll give you two and a half minutes. So again, Your Honors, although I would be the first to admit that there were several inconsistencies in this case, I still believe given the liberty interest at stake, namely that the petitioner is claiming that she fled China because she was persecuted and she fears future persecution, it was incumbent on the immigration judge to give her an opportunity to corroborate her claim. The first time that the immigration judge raised the issue of corroboration was in her oral decision. But at that point, obviously the... Is there, her persecution is the time she got jailed and... Yes. Yes, Your Honor, she claims that while she was detained, she was beaten with a baton 12 times, she was kicked, she was punched, and she was detained overnight. Oh. Thank you. Thank you, Your Honors. Morning. Good morning. May it please the Court, my name is Jocelyn Wright. I'm here on behalf of Respondent, United States Attorney General. Petitioner has not demonstrated that every reasonable fact finder would be compelled to conclude that the agency's adverse credibility finding is wrong and therefore we ask that the petition for review be denied. Let me begin by addressing petitioner's claim that the immigration judge didn't give her sufficient notice regarding the requirement for corroboration. If you look at the administrative record at page 93, this is the very first master calendar hearing that was held... If you speak a little more into... Oh, sure. Is that helpful? Thank you. Administrative record, page 93, this is the first master calendar hearing held in July of 2008. The immigration judge specifically put petitioner's counsel on notice that petitioner bore the burden of proving her claim and therefore it was incumbent upon her to submit any and all documents that she had... No, but there's a specific requirement of notice for corroboration, isn't there? That doesn't cover it, the general warning. As you pointed out earlier, Your Honor, under circuit law in Wren, that's only... Those notice of corroboration requirements only come into play if the testimony is otherwise credible. And in this case, the immigration judge, after going through all of the evidence in her oral decision, came to the conclusion that she didn't know what to believe regarding petitioner's claims, regarding where she lived, how she worked, and how Grandpa Lou and his wife died, and how all that played together with the claim. And because she didn't know what to believe, it's not so much that her testimony was credible, it's that she didn't know what to believe and therefore the credibility finding, the adverse credibility finding was what the immigration judge entered. Let me address specifically the grounds that the board affirmed. These discrepancies are not really that great, are they? Yes, they are, Your Honor. Why? Well, for example, the very first one, the primary one, is the matter of where she lived. The address that she... She claims that the Huamau building is where she and her family lived, and that was her primary residence. And her claim is that because the government came and took the property, forcibly evicted them, but didn't offer them fair market value for the property, she and her family weren't able to get sufficient money to buy property of the same value, quality, in the same area, and that was her claim. And so where she lived and the primary residence is very important and relevant to her claim. In support of that claim, the only thing that she submitted was a property title that says she owned the property. But there was no other evidence, despite the fact that she had her first... Well, that's a little... that's better than nothing. It's better than nothing, but it certainly... I mean, a lot of people live in the places where they're on the deed. If you own it, that is... And that's true, Your Honor. They wanted her out, right? Yes. They wanted her out. So what year was this now? This is 2007. 2001? 2007, Your Honor. 2007. So they want you out of the property. You have really no choice because they'll send around another couple hundred guys with sledgehammers the next day and they just knock it down. I mean, I've been there and I've watched it myself, you know. So she said she lived at this Omaha building and at a different address, the Louiani Lee property. And she had an ownership interest in both of them. Did she? I don't know if she had an ownership interest in the address that appeared on her household registry. I believe her testimony was that was her mother-in-law's property. Well, she had an interest in it through her mother-in-law, right? Well, according to the household registry, she lived there, Your Honor. And, you know, this was all conducted in English and there was a translator there. That's correct, Your Honor. That always creates problems, too. It may create problems, but in this instance there's no indication that there was an issue, Your Honor. It may seem like they're minor matters. Well, the transcript is kind of garbled, isn't it? In some places there were some places where the interpreter required clarification, but there's been no issue brought on appeal either before the board or this court challenging any of the translations. Is there a reason that this case was never mediated or never considered for that? I wasn't the attorney who handled this throughout, so I'm not sure why. But I do know that when the court sent out the pre-oral argument notice, which it does in immigration cases, we approached DHS regarding whether this would be a candidate for prosecutorial discretion and DHS affirmatively declined to exercise prosecutorial discretion, Your Honor. Is that because it's an adverse credibility case or is it? I think it's the totality of the circumstances and the information in her administrative file, which we don't have access to, so I don't know exactly what DHS based its determination on. Did they ever get to the asylum withholding or, since it was an adverse credibility, if, and I'm speaking hypothetically at this point, we haven't discussed the case, if we found that we didn't believe that it was supported or she should have been allowed an opportunity to rebut things, does it have to be remanded to make those determinations? Yes, Your Honor, because the Board of Immigration Appeals decision only affirmed the adverse credibility determination. It didn't address the immigration judge's alternative merits ruling and under the court's decision in Tekla, a remand is required. Has she committed any crimes? The record doesn't reflect any. And she's a well-educated woman? Yes. Then why should we shoot ourselves in the foot and try to get rid of her? Tell me. It's the... Out of public interest. Well, Your Honor, she hasn't shown any eligibility for a basis to remain in the United States. And under the immigration laws, that's what's required. It's not simply whether or not we think she's a good person, it's whether or not she qualifies under the law for any relief that would allow her to remain here. How long has she been here? Since 2007, Your Honor. So when? Since 2007. Eight years? Approximately, yes. Did... Is her husband here with her? No, the husband, her daughter, and her stepson, I believe, are still living, at least at the time of the hearing in 2011, they're still living in Kunming Road in China. If she were... If she had submitted documentation, material supporting her contention that the household registers in China often contain outdated information, would there have been... Would this have... I know it's speculation, but would that have made a difference? I'm not sure, Your Honor. I don't know if it would. And I say that because, looking at the State Department report, there was one paragraph, a very short paragraph, regarding household registries in the State Department report. And all it said was that household registers, they were having... That the government still relies on them, but that there was so much influx of population from the rural areas to the city that the accuracy of the household registers were not... It was hard to keep up with that. But that this was... But because the government kept their population to what the household register says, that the people who were moving from the rural areas to the city but had the household register still showing that they lived in the rural areas were having problems accessing services. And so that undercuts Petitioner's claim. First of all, in this case, there's no... It's no indication that she moved from the rural to the city. It was all within the same district. And so if the government is still using the information on the household registry to hold people to that information regarding the administration of public services, then it would seem that it needed to be accurate and that it undercuts her claim that it doesn't matter because the government doesn't care about the accuracy of the household registry. Is there really any question that she became a nurse in 1983 and worked in hospitals from 83 to 2007? Well, there's no question, it seems, that she graduated from nursing school. That's true. There's evidence in the record that she graduated from nursing school and received certification from a medical college in 1996. Whether she worked as a nurse, it's not clear because her asylum application says that she worked as a nurse from 1983 to, I believe it was 2004, in one hospital, Honghui Hospital. And then from 2004 until 2007, she worked at a second hospital, Hongqiao. However, when she was on the stand, she specifically said that she had never worked at a second hospital. She only worked in Honghui from the time she graduated in 1983 until she left China in 2007. So she completely disavowed the existence of her employment in the second hospital. But it appears on her asylum application which, as the immigration judge pointed out, she was given a chance to affirm the correctness and accuracy of the information in there. And she didn't bother to correct the fact that she was never employed at Honghui Hospital. Additionally, the immigration judge noted that her husband's medical records were apparently issued by this very same Hongqiao Hospital, which she says she has never worked at, although it is listed on her application as a place where she actually was employed before she came to the United States. And I see that my time has expired. Unless the Court has any further questions. We ask that the petition for review be denied. Thank you. Say something? Yes. Did you represent the petitioner at these hearings? No, Your Honor. One counsel represented her at trial. A different counsel represented her before the Board. This is my first time representing her at the Ninth Circuit level. What did you say? I'm only representing her at this level, Your Honor, at the Ninth Circuit level. So you're the third attorney on this case? I am, Your Honor. But you're not all in the same firm? No, Judge. Is she here today? No, she's not. Who prepared her initial papers? I'm not sure. Mr. Gibson was the attorney at the trial level. I'm assuming it's his office that prepared the application, but I'm not sure for certain, Your Honor. Did a notarial prepare? I don't know, Judge. Aren't you curious about this? That issue never came up at trial or at the Board level. But you're representing someone. You need to start from the beginning. Correct. I understand, Judge. In rebuttal, Your Honor, the respondent stated that there were some corroboration warnings given at an earlier hearing before the trial. But in my reading of Wren, it specifically states, if a credible applicant has not yet met his burden of proof, then the IJ may require cooperation. So in other words, by my reading of this, I interpret it to mean that after the testimony has been taken, at that point if the immigration judge decides believes that more cooperation is required, then she must ask the petitioner to provide cooperation given that opportunity. And again, that was not done here. And if you look at the immigration judge's oral decision... But the immigration judge did not think your client was credible. That's the catch there. That's true, Your Honor. But again, she did not think she was credible because there was no cooperation for her explanations of the inconsistencies. Well, cooperation, if you had any, certainly would have helped the position. But the IJ's ruling was that without concerning cooperation, he found her testimony not to be credible, right? Cooperation aside, he said, well, she told this story, she told this story. You know, there's an inconsistency. I don't believe her. What's interesting, Your Honors, is that the immigration judge made no adverse credibility finding with respect to her persecution, her beating, the fact that her house was demolished. Her whole argument focused on the inconsistency with respect to her property. And again, as the judge stated... Well, they didn't get to those issues because they said, I don't believe you. So there isn't a determination. That's why I asked whether because sometimes if they get to those issues, then we can look at that. You know, they can make the adverse credibility, but then they say even if, I'm going to, you're not entitled to asylum because you haven't met the requisite there. I mean, you don't have a strong case for cap, necessarily. I would agree with that, Your Honor, but again, I go back to the whole cooperation issue. In this particular case, given the liberty interest at stake, naming that she fears for her life or she feels she'll be persecuted if she returns, there would have been no prejudice to the government whatsoever. But her family is still there safely, so that... But she was the one who was arrested. She was the one who was beaten, and the testimony is clear that her husband called her when she returned to the United States the last time, that government officials are going to her house in search of her. Okay. Thank you. Thank you, Your Honor. The matter is submitted.
judges: Pregerson, Tashima, Callahan